1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10
11

DAN BEDKER, JR.,

                    Plaintiff,

          v.

JOSEPH LEHMAN, KIMBERLY ACKER,
VICTORIA ROBERTS, and SIX TO BE
NAMED DEFENDANTS,

                    Defendants.

Case No. C05-5276RJB

REPORT AND
RECOMMENDATION

Noted for April 21, 2006

12
13
14
15
16
17
18

          This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge

19 pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR

20 3, and MJR 4.  The matter is before the court on defendants' motion for summary judgment (Dkt. #21).

21 After reviewing defendant's motion and the balance of the record, the undersigned recommends that

22 the Court grant summary judgment in favor of defendants and dismiss plaintiff's complaint and

23 causes of action.

24                                        FACTUAL BACKGROUND

25          On April 12, 2005, plaintiff submitted a *pro se* civil rights lawsuit under 42 U.S.C. § 1983,

26 naming Joseph Lehman, Kimberly Acker, Victoria Robers, and Six Unnamed individuals as

27 defendants.  Each of these three named defendants is an employee of Washington State's Department

28 REPORT AND RECOMMENDATION - 1

1  of Corrections during the relevant period at issue.  In his Complaint, Mr. Bedker claims that he was

2  unlawfully detained by defendants past his earned early release date ("EERD"), in March 2000.

3  Complaint at 4.  According to one statement of the Complaint, Mr. Bedker, who is currently in the

4  custody of Washington State's Department of Health and Human Services at the Special

5  Commitment Center on McNeil Island,  was in custody as a state prisoner until his release in March

6  2004.  Complaint at 5.  However, in the next sentence plaintiff alleges he was unlawfully detained

7  past his earned early release date of April 9, 2004.

8      Defendants' motion for summary judgment sets for an accurate history of plaintiff's former

9  incarceration.  Mr. Bedker was convicted of First Degree Statutory Rape and Rape of a Child on

10  September 27, 1990.  He was sentenced to a term of 180 months (15 years), and required to serve

11  one year of community placement following his release from prison custody.   He had a possible

12  EERD of September 2000, and he was released from the custody of the Department of Corrections

13  on February 25, 2003.   The day prior to his release from prison, on February 24, 2003, Snohomish

14  County filed a sexually violent predator petition against Mr. Bedker, and he was therefore released

15  directly into the custody of Snohomish County pending the outcome of their petition.  Plaintiff is

16  currently civilly committed pursuant to Washington State's Sexually Violent Predator Act.

17      Defendants move for summary judgment arguing the following: (1) plaintiff had no liberty

18  interest in an early release from his confinement; (2) defendants are entitled to qualified immunity; (3)

19  defendants are  is entitled to dismissal under the discretionary decision-making doctrine; (4) plaintiff

20  has failed to file a state tort claim form; and (5) plaintiff's claims must be dimissed for failure to

21  comply with the statute of limitations.

22      After carefully reviewing the matter the undersigned finds defendants have provided sufficient

23  facts and argument to support their motion for summary judgment.  The court finds plaintiff has

24  failed to show that a genuine issue of material fact remains to be decided and therefore,  a decision

25  on summary judgment is appropriate.  Accordingly, the court should find there is no genuine issue of

26  material fact that would prevent the court from granting summary judgment in favor of defendants.

27                                DISCUSSION

28  REPORT AND RECOMMENDATION - 2

1    A summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that

2    there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

3    matter of law. Fed.R.Civ.P. 56(c). In deciding whether to grant summary judgment, the court must

4    view the record in the light most favorable to the nonmoving party and must indulge all inferences

5    favorable to that party. Fed.R.Civ.P. 56(c) and (e). To deny a motion for summary judgment, the

6    court need conclude only that a result other than that proposed by the moving party is possible under

7    the facts and applicable law. <u>Aronsen v. Crown Zellerbach</u>, 662 F.2d 584, 591 (9th Cir. 1981), <u>cert</u>.

8    <u>denied</u>, 459 U.S. 1200 (1983). When a motion for summary judgment is made and supported as

9    provided in Fed.R.Civ.P. 56, an adverse party may not rest upon the mere allegations or denials of

10   his pleading, but his response, by affidavits or as otherwise provided in Rule 56, must set forth

11   specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). If he does not so

12   respond, summary judgment, if appropriate, shall be rendered against him. <u>Id</u>.

13   The standard provided by Rule 56 requires not only that there be some alleged factual

14   disputes between the parties, but also that there be genuine issues of material fact. <u>Anderson v.</u>

15   <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). Genuine disputes are those for which the

16   evidence is such that "a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>,

17   477 U.S. at 248. Material facts are those which might affect the outcome of the suit under

18   governing law. <u>Id</u>. Summary judgment is appropriate if, viewing the evidence in the light most

19   favorable to the party opposing the motion, there is no genuine issue of material fact, and the moving

20   party is entitled to judgment as a matter of law. <u>Swayze v. United States</u>, 785 F.2d 715, 717 (9th

21   Cir. 1986)(citing Fed.R.Civ.P. 56(c)); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 816 n.26 (1982).

22   After reviewing the merits of the complaint, the court finds that plaintiff's allegations based

23   on his EERD do not present a cognizable claim. A prison inmate has no constitutional right to

24   release before expiration of his or her sentence. <u>Greenholtz v. Inmates of Nebraska</u>, 442 U.S. 1

25   (1979). Washington State appellate courts recognized an independent state created interest in

26   amassing early release credits. <u>In Re Galvez</u>, 79 Wn. App 655 (1995). The Washington State Court

27   of Appeals, Division 1, found there to be a "limited  liberty interest" in earned early release credit

28   REPORT AND RECOMMENDATION - 3

1    which requires minimal due process.  In re Crowder, 97 Wn. App. 598 (1999). In Dutcher the same

2    appellate court emphasized it was proceeding under RAP 16.4, which did not require a finding of a

3    constitutional violation but rather only a finding of unlawful restraint under state law.  Dutcher, supra

4    at p. 758 (fn. 3 and 4, *citing* In re Cashaw, 123 Wn. 2d 138 (1994)).

5         The plaintiff in Cashaw filed a personal restraint petition (PRP) which challenged the actions

6    of the Indeterminate Sentence Review Board in setting his minimum prison term to coincide with the

7    remainder of his court-imposed maximum sentence.  The Court of Appeals granted the "PRP after

8    concluding the Board's failure to follow its own procedural rules violated Cashaw's due process

9    rights." Cashaw, supra, at p. 140.  While the Washington Supreme Court affirmed the grant of the

10   PRP, it did so on the ground that "an inmate may be entitled to relief solely upon showing the Board

11   set a minimum term in violation of a statute or regulation." Cashaw at p. 140.  The Washington

12   Supreme Court disagreed, however, with the Court of Appeals and found "that no due process

13   liberty interest was created here, for the Board's regulations imposed only procedural, not

14   substantive, requirements." Cashaw at p. 140.  The state court affirmed the notion that "procedural

15   laws do not create liberty interests; only substantive laws can create these interests." Cashaw, supra

16   at p. 145.  The Washington State Supreme Court in Cashaw was careful to grant relief only on state

17   grounds.  Indeed, the State Supreme Court in Cashaw analyzed what is needed to find a state created

18   liberty interest and found no due process violation in that case.  The court stated:

19            Liberty interests may arise from either of two sources, the due process clause
         and state laws. Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d
20       675 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir.1986), cert.
         denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The due process
21       clause of the federal constitution does not, of its own force, create a liberty interest
         under the facts of this case for it is well settled that an inmate does not have a liberty
22       interest in being released prior to serving the full maximum sentence. Greenholtz v.
         Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100,
23       2103, 60 L.Ed.2d 668 (1979); Ayers, 105 Wash.2d at 164-66, 713 P.2d 88; Powell,
         117 Wash.2d at 202-03, 814 P.2d 635.

24            However, as indicated above, state statutes or regulations can create due
25       process liberty interests where none would have otherwise existed. See Hewitt, 459
         U.S. at 469, 103 S.Ct. at 870; Toussaint, 801 F.2d at 1089; Powell, 117 Wash.2d at
26       202-03, 814 P.2d 635. By enacting a law that places substantive limits on official
         decision making, the State can create an expectation that the law will be followed,
27       and this expectation can rise to the level of a protected liberty interest. See Toussaint,

28   REPORT AND RECOMMENDATION - 4

1    801 F.2d at 1094.

2       For a state law to create a liberty interest, it must contain "substantive
     predicates" to the exercise of discretion and "**specific directives to the decision**
3    **maker that if the regulations' substantive predicates are present, a particular**
     **outcome must follow**". Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454,
4    463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989); Swenson v. Trickey, 995 F.2d
     132, 134 (8th Cir.), cert. denied, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 468
5    (1993). **Thus, laws that dictate particular decisions given particular facts can**
     **create liberty interests, but laws granting a significant degree of discretion**
6    **cannot.**

7    In Re Cashaw, 123 Wn 2d at 144 (emphasis added).

8       The Department of Corrections has been mandated by state statute to implement a system

9    that allows for the possibility of early release.  For some inmates their release is automatic when they

10   reach their earned early release date because they have no supervision following incarceration.

11   Inmates who were sentenced to community placement or community custody, cannot earn this

12   reduction in sentence.  Instead, they earn a possibility of being placed on community placement or

13   community custody at the discretion of the Department of Corrections.  Their release is not

14   automatic.

15      In Dutcher, the Court of Appeals proceeded pursuant to RAP 16.4 (Personal Restraint

16   Petition - Grounds for Remedy).  The court used a standard of review which did not require the

17   finding of a constitutional violation.  The ruling in Dutcher that the department must follow the state

18   statutory system and consider plans on the merits does not equate to a finding of a state created

19   liberty interest in release and the holding in Dutcher did not eliminate the departments' discretion.

20      In 1995 the United States Supreme Court examined the methodology used to determine if

21   state laws or regulations created liberty interests in a prison context and the Court adopted a new

22   approach.  Sandin v. Conners, 515 U.S. 472 (1995).  The decision in Sandin was a reaction to the

23   practice of combing state regulations for mandatory language to find liberty interests.  The refusal to

24   investigate a proposed plan does not lead to violation of a constitutionally protected right.  There is

25   no change in the incidents of normal prison life and the inmate is held until the expiration of his

26   sentence.   Accordingly, Mr. Bedker's claims based on the allegation that his civil rights were

27   violated when he was not released on or near his EERD are without merit.

28   REPORT AND RECOMMENDATION - 5

<u>CONCLUSION</u>

For the reasons outlined above the undersigned recommends **granting** defendant's motion for summary judgment (Dkt. # 21) and dismiss plaintiff's complaint and causes of action.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 21, 2006**, as noted in the caption.

DATED this 29th day of March, 2006.


*/s/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 6